UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

STATE AUTOMOBILE MUTUAL )
INSURANCE COMPANY, )
 )
    *Plaintiff*, )
 )
v. ) Case No. 1:05-CV-61
 )
TURNER FUNERAL HOME, INC., J. MIKE ) Judge Mattice
TURNER, ROBERT K. SCHRADER, )
LARRY DOWDEN, STEVEN HENSLEY, )
JR. and/or STEVEN HORNSBY, JR., )
 )
    *Defendants*. )

## MEMORANDUM

**I.  INTRODUCTION**

Plaintiff State Automobile Mutual Insurance Company brings this action seeking a declaration of its rights and duties under two commercial liability insurance policies issued to Defendants Turner Funeral Home Incorporated and involving Defendants Messrs. J. Mike Turner, Robert K. Shrader, Larry Dowden, Steven Hensley, Jr./Hornsby, Jr. Plaintiff argues that the insurance contracts present it with neither a duty to defend nor to indemnify Defendants in a pending state court action. Pending before the Court is Plaintiff's unopposed Motion for Summary Judgment.

After carefully reviewing the record, the Court will **DECLINE** to exercise jurisdiction over the instant action, which will be **DISMISSED WITH PREJUDICE**.

**II.  FACTS AND PROCEDURAL POSTURE**

Plaintiff is an insurance company organized under the laws of Ohio with its principal place of business also in Ohio. (Court Doc. No. 1, Compl. ¶ 3.) Defendant Turner Funeral

Home is incorporated in Tennessee, and its principal place of business is in Tennessee. (*Id.* ¶ 4.) Defendants Messrs. Turner, Schrader, Dowden, and Hensley/Hornsby are citizens of Tennessee. (*Id.* ¶¶ 5-8.)

Plaintiff issued to Defendant Turner Funeral Home commercial general liability and umbrella liability insurance policies. (*Id.* ¶ 10.) These two insurance contracts generally extended liability coverage for Defendant Turner Funeral Home's business operations. (*Id.* Exs. 1-6.)

Defendant Turner Funeral Home is one of the many funeral homes implicated in the widely-publicized Tri-State Crematory matter. It is a named defendant in *Walker County v. Tri-State Crematory*, No. 05CV66911 (Ga. Super. Ct. filed Sept. 23, 2004). In this state civil matter, Walker County, Georgia asserts various regulatory, nuisance, negligence, and vicarious liability claims against, *inter alia*, Defendants to recover costs associated with the Tri-State Crematory remediation efforts. (*See* Compl. Ex. 8.) It is this state litigation that underlies the instant action for declaratory judgment.

In the course of the underlying state court litigation, Plaintiff and Defendants came to a disagreement over the extent of coverage provided by Defendant Turner Funeral Home's commercial general liability and umbrella liability insurance policies. Defendants argue that the two insurance contracts saddled Plaintiff with duties to defend and indemnify Defendants in the underlying action. Although Plaintiff denies any such duties, it continues to provide for Defendants' defense under a reservation of rights. (Compl. ¶ 26.) Plaintiff is not a named party in the underlying state court litigation. (*See* Compl. Ex. 8.)

In an attempt to determine its duties under the insurance contracts, Plaintiff filed the instant action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-202, and

Federal Rule of Civil Procedure 57. In its Complaint for Declaratory Judgment, Plaintiff sets forth several grounds in support of its claim that it is not under a duty to defend or indemnify Defendants. (*See* Compl.) It expounds upon these grounds in its Motion for Summary Judgment. (*See* Court Doc. No. 32-1, Pl.'s Br. in Supp. of its Mot. for Summ. J. 12-28.) The majority of Plaintiff's arguments are based upon contractual interpretation. Plaintiff contends that the insurance contracts do not cover the causes of action or damages alleged in the underlying state litigation, that specific exclusions negate what would be otherwise covered, and that the allegations in the underlying state litigation occurred outside the effective dates of coverage. (*See id.*)

Plaintiff also argues that the issue of coverage has already been adjudicated. Plaintiff contends that continued litigation of coverage under the insurance contracts is barred by "*res judicata*, collateral estoppel, or other issue or claim preclusion" (Compl. ¶ 11), and that this Court's ruling in *State Auto Insurance Co. v. Turner Funeral Home, Inc.*, No. 103-CV-083, 2003 WL 23218046 (E.D. Tenn. 2003), has preclusive effect on the instant action. (Pl.'s Br. in Supp. of its Mot. for Summ. J. 10-12.) Much like in the instant action, State Auto Insurance Companies (presumably Plaintiff State Automobile Mutual Insurance Company's privy) sought a declaratory judgment that two of its insurance policies–the same two that are at issue in the instant action–did not impose upon it a duty to defend or indemnify Defendant Turner Funeral Home in then-pending state court litigation. *Cf. State Auto*, 2003 WL 23218046; *Walker County*, No. 05CV66991. This Court exercised jurisdiction over State Auto's declaratory judgment action, and held that the two insurance contracts did not cover the allegations in the state court litigation. *See id. at* *16-20. Therefore, the Court declared that State Auto was under no duty to defend or

indemnify Defendant in the since-concluded state court litigation. *See id.* at *20.

The prior state court litigation arose out of the same set of occurrences as did the pending state court litigation that underlies the instant action. In the prior state court litigation, private plaintiffs asserted various claims of intentional infliction of emotional distress, negligent hiring and supervision, and breach of contract and fiduciary duty against Defendants. *Id.* at *16-20. By contrast, in the state court litigation underlying the instant action, Walker County asserts regulatory, nuisance, negligence, and vicarious liability claims. *See Walker County*, No. 05CV66911. Thus, in the prior underlying state court litigation, the plaintiffs–and more importantly the causes of action–differed from those in the pending state court litigation which underlies the instant declaratory judgment action. In effect, in the prior declaratory judgment action, this Court interpreted the same two insurance contracts that are currently at issue, but as applied to a different set of circumstances .

### III.    DISCUSSION

Plaintiff seeks a judgment in the instant action under the Declaratory Judgment Act, 28 U.S.C §§ 2201-202. The Declaratory Judgment Act grants district courts discretionary jurisdiction over actions within its purview. *Id.* § 2201 (providing that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). This statutory discretion is broad, but not unbounded. The Sixth Circuit provides specific guidance to district courts faced with the decision of whether to hear a declaratory judgment claim. District courts should consider:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Each *Grand Trunk* factor is considered in turn.

### A. Whether the declaratory action would settle the controversy.

The controversy in the instant case is one of insurance coverage. Plaintiff seeks a declaration that it has neither a duty to defend nor indemnify Defendants in the underlying state court action. In one sense, a declaration of Plaintiff's duties would help to settle controversy: the issue of coverage would be put to rest. In another sense, however, controversy would persist. A declaration of Plaintiff's rights and duties under the insurance contracts would not address any matter currently at issue in the underlying state court proceedings, since Plaintiff is not a party to the state litigation. Ultimately, regardless of who must indemnify whom, the issues currently before the state court will remain in contention, and the first *Grand Trunk* factor will be left wanting. *See U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, No. 04-4426, 2006 WL 41185, at *3 (per curium) (citing *Bituminous Cas. Corp.*, 373 F.3d at 814) (upholding a finding that the first *Grand Trunk* factor was not met when the declaratory judgment would not address anything at issue in the underlying state court litigation); *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278 (6th Cir.1990) (abrogated on other grounds) (holding that the first *Grand Trunk* factor was not met in a situation in which the insurer was not a named party in the underlying state court litigation

-5-

against the insured).

> **B. Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue.**

Similarly, a declaratory judgment would make clear the legal relationship between Plaintiff and Defendants. But a judgment would not tend to clarify the relationships currently at issue in the underlying state action. The Sixth Circuit has "repeatedly held in insurance coverage diversity cases that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" *Bituminous Cas. Corp.*, 373 F.3d at 812 (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir.1986) (abrogated on other grounds)). Likewise, a declaration of Plaintiff's duties of defense and indemnity will probably do little to clarify the underlying state action, and the second *Grand Trunk* factor will not be satisfied. *See U.S. Fire Ins. Co.*, 2006 WL 41185, at *3 (upholding a finding that the second *Grand Trunk* factor was not met when the plaintiff's declaration judgment action raised only issues of indemnity, which were not at issue in the underlying state court litigation).

> **C. Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*.**

Plaintiff's pleadings do not suggest that it is seeking a procedural advantage or acting in bad faith. However, courts have inferred motives of procedural jockeying in similar situations. The mere fact that the issue of indemnification will eventually surface in the underlying state court litigation, coupled with the insurer's choice to seek an advanced judgment on the issue, is enough to infer that the plaintiff is attempting to advantage itself

procedurally. *U.S. Fire Ins. Co.*, 2006 WL 41185, at *4. While the Court is not willing to go as far as inferring that Plaintiff is acting solely for its procedural gain, it is also not willing to rule out this possibility. Thus, the third *Grand Trunk* factor weighs neither in favor of exercising nor declining jurisdiction.

### D. Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction.

The fourth *Grand Trunk* factor addresses concerns of comity and federalism inherent in certain declaratory judgment actions. To aid in this analysis, the Sixth Circuit provides three sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous Cas. Corp.*, 373 F.3d at 814-15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

The instant action's procedural posture and applicable law complicate the analysis under the fourth *Grand Trunk* factor. The underlying state court complaint asserts issues of Georgia law, and is before a Georgia court. (*See* Compl. Ex. 8.) Plaintiff issued the insurance contracts at issue in Tennessee, to a Tennessee corporation. (*See id.* ¶ 10.) Therefore, Tennessee contract law will govern the issue of coverage, and will determine Plaintiff's duties to defend and indemnify Defendants against the Georgia law causes of

action brought before the Georgia court.[1] Plaintiff asks this Court to apply Tennessee law to facts which arose out of Georgia litigation. To determine the propriety of Plaintiff's request, in relation to comity and federalism considerations, the Court turns to the three sub-factors quoted above.

    1. *Whether the underlying factual issues are important to an informed resolution of the case.*

First, the underlying facts are important to a proper resolution of the issue of coverage. Plaintiff bases all but one of its arguments on the causes of action asserted in the underlying state action read in relation to the language of the insurance contracts.[2] (*See* Pl.'s Br. in Supp. of its Mot. for Summ. J.) It argues that the insurance contracts exclude from coverage Defendants' liability for the allegations contained in the underlying state court complaint. (*See id.*) Thus, Plaintiff's argument requires the Court to interpret and classify the Georgia state law claims asserted in the underlying action. These claims include unusual regulatory and vicarious liability theories. (*See* Compl. Ex. 8.) As these claims are drafted, it is unclear–on the face of the complaint–whether Plaintiff's coverage arguments are meritorious. Further factual development in the Georgia court will likely clarify the underlying complaint's allegations, and, in turn, Plaintiff's coverage arguments

---

[1] Jurisdiction in this Court is based upon diversity of citizenship. (Compl. ¶ 2.) This Court must apply the choice-of-law provisions of the forum state. *NILAC Int'l Mktg. Group v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Tennessee is the forum state in the instant action. "In the absence of an enforceable choice of law clause, Tennessee courts apply the substantive law of the state in which the policy was issued and delivered." Standard Fire Ins. Co. v. Chester O'Donley & Assocs., 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998) (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). The insurance contracts at issue were issued and delivered to a Tennessee corporation, presumably in Tennessee. (Comp. ¶ 10.) Therefore, this Court must apply Tennessee law in determining issues of contractual interpretation.

[2] Plaintiff's remaining argument relies on the doctrines of *res judicata* and collateral estoppel as applied to this Court's ruling in *State Auto Ins. Co. v. Turner Funeral Home, Inc.*, 2003 WL 23218046. (*See* Pl.'s Br. in Supp. of its Mot. for Summ. J. 10-12.)

on which it seeks a declaratory judgment.

> 2. *Whether the state trial court is in a better position to evaluate those factual issues than is the federal court.*

Second, the Georgia state court is in a better position to address the underlying factual issues than is this Court, as it has entertained the underlying litigation since September of 2004. (*See* Compl. Ex. 8.) "Such actions for an advance determination in the nature of an advisory opinion should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling [and] orderly presentation of fact issues ... are created." *Manley, Bennett, McDonald & Co.*, 791 F.2d at 463. In essence, Plaintiff asks the Court to glean the facts of the underlying litigation, while a competent Georgia state court plows the same set of facts.

> 3. *Whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.*

Third, there exists a close nexus between the underlying factual and legal issues, and state law and public policy. As explained above, Plaintiff primarily seeks determinations of Tennessee contract law. Tennessee courts weigh policy considerations heavily when interpreting insurance contracts. *See State Farm Fire and Cas. Co. v. White*, 993 S.W.2d 40, 43 (Tenn. Ct. App. 1998) ("The parties to an insurance policy are free to contract as they see fit as long as the parties remain within the bounds of the law, including public policy."). In asking this Court to interpret the insurance contracts, Plaintiff also seeks an interpretation of Tennessee public policy. While it is sometimes called upon to do so as an incident of its diversity jurisdiction, this Court is clearly not as well positioned to make

judgments of state public policy as a Tennessee state court.

Moreover, several of Plaintiff's contractual arguments have not yet been addressed by Tennessee courts.[3] While these unsettled state law questions do not prohibit this Court from hearing the instant action, they present yet another reason not to exercise jurisdiction. *See Bituminous Cas. Corp.*, 373 F.3d 807 at 815-16 ("While a district court should not necessarily refuse to exercise jurisdiction because a case involves undetermined questions of state law, it is an appropriate consideration when determining the suitability of a case for declaratory judgment."); *Scottsdale Ins. Co.*, 211 F.3d at 969. A Tennessee state court is in a better position than this Court to address novel issues of the law and public policy of Tennessee. *See Bituminous Cas. Corp.*, 373 F.3d at 816.

After considering the federalism and comity implications it becomes clear that the Georgia court is more able to address the facts of the instant action. A Tennessee court, however, is in a better position to apply it's own laws of contractual interpretation to the insurance contracts at issue. This Court enjoys neither advantage. Thus, the fourth *Grand Trunk* factor weighs against exercising jurisdiction.

### E. Whether there is an alternative remedy which is better or more effective.

Plaintiff can pursue alternative and preferable remedies. Plaintiff could seek a declaration of its duties in the Georgia state court in front of which the underlying action is now pending. *See* O.C.G.A. §§ 9-4-1 to 9-4-10. The Georgia court is better able to

---

[3] According to Plaintiff, Tennessee courts have not addressed whether cleanup costs associated with improperly disposed human remains are included in the meaning of the term "damages" as used in a comprehensive general liability policy. (Pl.'s Br. in Supp. of its Mot. for Summ. J. 12-15.) Nor have Tennessee courts determined whether the term "pollutants" in a provision excepting coverage under an insurance policy includes human remains. (*Id.* at 20-23.) Plaintiff's arguments require a court to determine the meaning of both terms.

address the factual issues–such as the causes of action brought against the Defendant in the underlying litigation–that the Plaintiff brings before this Court. *See Bituminous Cas. Corp.*, 373 F.3d at 816. (holding that, in a declaratory judgment, the preferable forum is normally the state court in which the underlying litigation is pending).

Alternately, the Tennessee Declaratory Judgment Act, T.C.A. §§ 29-14-101 to 113, permits Plaintiff to seek a declaration of its duties to defend and indemnify in the same court that is currently hearing the underlying action. *See id.* § 102(a). A Tennessee state court's declaration on those issues would be preferable to either a Georgia court's or this Court's. A Tennessee court would be in the best position to address the unsettled issues of Tennessee contract law and public policy Plaintiff brings before this Court. *See Bituminous Cas. Corp.*, 373 F.3d at 816.

Other, more preferable remedies for Plaintiff exist. The fifth *Grand Trunk* factor weighs against this Court exercising jurisdiction.

## IV. CONCLUSION

After considering each *Grand Trunk* factor individually, and weighing them as a whole, jurisdiction over Plaintiff's declaratory judgment action will be **DECLINED**.[4] Normally the preferable course is to stay Plaintiff's action until the underlying state action is resolved. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995). However, in consideration

---

[4] The Court is aware that, at first glance, its decision to exercise discretionary jurisdiction in *State Auto Insurance Co. v. Turner Funeral Home, Inc.*, No. 103-CV-083, 2003 WL 23218046 (E.D. Tenn. 2003), may seem discrepant with its decision to decline jurisdiction in the instant case. However, the factual differences between *State Auto Insurance Co.* and the instant case warrant different results. In *State Auto Insurance Co.*, the Court was asked to interpret the insurance contracts as applied to relatively common and straightforward state law claims, such as breach of contract and negligence. *See id.* In contrast, in the instant action, the Court is asked to interpret the insurance contracts in conjunction with novel issues of state law, and as applied to various nuisance and vicarious liability claims which are less than facially clear. (Compl. ¶ 23.)

of the novel state law and public policy questions posed by the action, and the availability of a declaratory judgment rendered by a state court, Plaintiff's declaratory judgment action will instead be **DISMISSED WITH PREJUDICE**. *See Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 817 (6th Cir. 2004).

A separate Order will enter.

    *s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE